UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SHANNON LAMAR DENNIS                    CIVIL ACTION NO. 5:15-cv-00058

VERSUS                                   JUDGE FOOTE

N. BURL CAIN                             MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Shannon Dennis ("Petitioner") of second degree murder, and he was sentenced to life imprisonment. The conviction was affirmed on direct appeal. State v. Dennis, 72 So.3d 968 (La. App. 2d Cir. 2011), writ denied, 89 So.3d 1189 (La. 2012). Petitioner also pursued a post-conviction application in state court. He now presents this court with a petition for habeas corpus relief based on (1) sufficiency of the evidence, (2) adequacy of the indictment, (3) the right to present a defense, and (4) ineffective assistance of counsel. For the reasons that follow, it is recommended that the petition be denied.

**Relevant Facts**

Lakesha Pouncey (Tr. 455-74) testified that some friends gathered outside her home in the Allendale area of Shreveport on a Friday night in September 2008. One of those at the gathering was Tyrone Alexander, who brought the victim, Terry Wilson, with him. Ms. Pouncey said the two men were standing next to Alexander's car when they saw a man across the street wearing a black hooded sweatshirt. Ms. Pouncey heard both men say the

name, "Shannon," and Wilson said, "He's not going to do anything." Alexander went inside Ms. Pouncey's house and locked the door behind him. Ms. Pouncey saw the hooded man approach Wilson with a rifle, shoot him several times, and walk away. She did not see the shooter's face that was inside his hood.

Tiera Thomas (Tr. 475-501), the victim's 16 year old daughter, was in a front yard about four houses away when she saw the man shoot her father. She did not know the name of the shooter, but she had seen him and another man walk by a few minutes earlier. She noted, as the two passed by her under a streetlight, that one man was wearing a black hoodie and had a cross tattoo in the center of his forehead. Police later showed her a photo lineup of six persons, at least three of whom had a cross tattoo on his forehead, and she identified Petitioner as the man who walked by her house and then shot her father.

Petitioner was developed as a suspect after his niece, Deanne Dennis, came to them and reported what she knew. Ms. Dennis (Tr. 505-555) said she had been at her mother's house on the morning after the shooting. Petitioner (her mother's brother) had come to visit, and he seemed scared. He gathered everyone together and asked them that, if anyone asked, to say that he had been at the house the prior evening before 10:00 p.m. when the news came on.

Ms. Dennis testified that Petitioner admitted to her a couple of days later that he killed Wilson. He said the men had fought in a club earlier that night, and he later shot him when he saw him outside the club. Petitioner told Ms. Dennis that they will never know who did it because it was dark and he had on a black hoodie. He also said he drove

a while and threw away the gun. He also claimed that a motive for the shooting was that Wilson had beaten Petitioner's aunt.

Ms. Dennis testified that Petitioner originally said he had thrown away his clothing. But, a few days after the shooting, Petitioner asked her to wash a pair of his blue jeans in cold water so "the blood and the gun residue will come out." Dennis said she saw what looked to be blood stains on the pants, and she did wash them. She eventually reported all of this to the police.

Dana Fuller (Tr. 556-573), a woman who Petitioner had lived with for several years, said the two had broken up about a month before the crime. She picked him up, however, when he asked for a ride a couple of days after the shooting. Petitioner first had her drive him to Pierre Avenue, about two blocks from the scene of the murder, where he went into an alley and returned about 10 minutes later. He then had her drive him to a wooded area near the KCS train yard and the Cross Lake area, where she let him out. Fuller drove away for about five minutes, then returned to pick up Petitioner and return him to his sister's house.

Police had Ms. Fuller take them to the wooded area. A search team located an SKS rifle, partially loaded, in the woods. No fingerprints were recovered from the rifle, but Carla White, a firearms expert with the crime lab, testified that the casings recovered at the scene of the murder were fired by the rifle. (Tr. 676-704). Police obtained a warrant for Petitioner and arrested him at the home of a friend, but only after a police K-9 had to bite him several times to convince him to come out of a closet.

Petitioner did not testify at trial. His sister, Shatyna Dennis (Deanne Dennis's mother) testified (Tr. 724-762) that Petitioner came to her house on the evening of the murder between 10:00 and 10:30 p.m. when she was watching the nightly news, spent the night, and she heard Petitioner leave around 7:00 a.m. the next morning. She said Deanne had not been there that evening, and she denied that Petitioner asked her to lie to provide an alibi.

**Sufficiency of the Evidence**

Petitioner argues that the evidence is not sufficient to support the jury's verdict. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The state appellate court decided this claim on the merits on direct appeal. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency

Page **4** of **14**

challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

Petitioner argues in this court that the evidence was insufficient to prove his guilt because none of the State's witnesses actually identified him as the shooter, Tiera Thomas was not credible because she was uncertain about the time she viewed the photo lineup, Deanne Dennis's testimony was at odds with that from a detective, and the case was circumstantial. Ms. Thomas did testify that she viewed the photo lineup the night of the shooting, but police testimony indicated that the lineup was actually presented several days later. Similarly, there were discrepancies between the testimony of Deanne Dennis and statements that she gave to police, mainly with regard to the timing of the events. The state appellate court took those arguments into consideration and held that they were inadequate to require reversing the jury's verdict under the Jackson standard. The state court reasoned that none of the timing discrepancies dispelled the overwhelming evidence that Petitioner was the shooter. State v. Dennis, 72 So.3d at 972-974.

Petitioner argues that no witness actually identified him as the shooter, but Tiera Thomas identified him as the hooded man who approached the victim and shot him, his clothing matched the description of the shooter, he had a motive based on the fight earlier that night, and he was linked to the murder weapon. Those facts, when taken in the light most favorable to the prosecution, allowed a rational juror to return a guilty verdict for

second degree murder. The state court's rejection of this claim was not an objectively unreasonable application of Jackson, so habeas relief must be denied.

**The Indictment**

A Caddo Parish grand jury indicted Petitioner for second-degree murder. Petitioner filed a pro se motion to quash on the grounds the indictment was not signed by the grand jury foreperson. The State responded by filing a superseding indictment that was signed by the grand jury foreperson. The signature was not dated, but the date on the front page of the superseding indictment was the same date as the first indictment. Petitioner then filed other challenges to the superseding indictment, including an argument that it was not concurred in by nine members of the grand jury and that fewer than nine members were present when the superseding indictment was issued.

The trial court heard arguments and denied the motions. Petitioner raised the issues on direct appeal. The state appellate court reviewed the facts and applicable state law in detail and determined that the superseding indictment was filed with the legitimate purpose of correcting a possible issue with the first indictment, and Petitioner had not offered any evidence to support his assertion that the indictment did not have the required number of grand jurors concur. State v. Dennis, 72 So.3d at 974-978. Petitioner again attacked the adequacy of the indictment in his post-conviction application. Tr. 1023-33. The trial court held that the superseding indictment was properly returned in open court. Tr. 1161. The appellate court and the Supreme Court of Louisiana summarily denied writ applications. Tr. 1250 and 1352.

The sufficiency of a state indictment or bill of information is not a matter for federal habeas corpus relief unless it can be shown that the charging instrument "is so defective that the convicting court had no jurisdiction." Morlett v. Lynaugh, 851 F.2d 1521, 1523 (5th Cir. 1988). For a charging instrument to be fatally defective, no circumstances can exist under which a valid conviction could result from facts provable under the instrument. State law is the reference for determining sufficiency and if the issue "is presented to the highest state court of appeals, then consideration of the question is foreclosed in federal habeas corpus proceedings." Morlett, supra. See also Wood v. Quarterman, 503 F.3d 408, 412 (5th Cir. 2007); McKay v. Collins, 12 F.3d 66, 68-69 (5th Cir. 1994). And "[a]n issue may be squarely presented to and decided by the state's highest court when the petitioner presents the argument in his application for post-conviction relief and the state's highest court denies that application without written order." Evans v. Cain, 577 F.3d 620, 624 (5th Cir. 2009).

Petitioner presented arguments on direct appeal and in post-conviction that attacked the procedural adequacy of the indictment. The state courts addressed and denied all of the arguments. Louisiana's highest court has twice denied a writ application and rejected Petitioner's challenges to his indictment, so there is no basis for habeas relief on this claim. Furthermore, the attacks on the indictment are rooted in alleged errors in the application of

state law.[1]  State law mistakes are not grounds for federal habeas relief.  Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991).

**Right to Present a Defense**

Petitioner filed a motion for new trial that was based on an affidavit from Deanne Dennis stating that she fabricated her trial testimony and her statements to the police.  Petitioner also offered medical records to indicate Deanne suffered from mental retardation and mood disorders, and he asked to present testimony from Deanne at a hearing.  The trial court refused to allow Petitioner to submit his evidence or hear testimony from Deanne.

Petitioner argued on direct appeal that the trial court denied him the right to present a defense at the hearing.  The appellate court found no error in the trial court's ruling.  It noted that Louisiana law gives the trial judge considerable discretion to evaluate the impact of newly discovered evidence, and the Supreme Court of Louisiana has held that recantations of trial testimony should be looked upon with the utmost suspicion.  The appellate court stated that Deanne testified at trial about facts that were generally consistent with what she told police, and her recantation was highly suspect given that she had to be housed in a hotel during trial due to credible death threats she received from her own family.  State v. Dennis, 72 So.3d at 977-78.

Petitioner labels this habeas claim as one based on the right to present a defense, a right rooted in the U.S. Constitution, but the substance of his argument is that the trial judge

---

[1] Problems with the charging instrument are generally not of federal concern because the grand jury provision of the Constitution is not binding on the states.  Campbell v. Louisiana, 118 S.Ct. 1419, 1423 (1998); Hurtado v. California, 4 S.Ct. 111 (1884).

did not properly follow the Louisiana Code of Criminal Procedure articles on motions for new trial. "[F]ederal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011). Accordingly, Petitioner would not be entitled to federal habeas relief on this argument if he were correct about the application of state law.

Petitioner invokes the right to present a defense, but he cites no authority that has held that a similar post-verdict ruling violates that right. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

The Supreme Court has recognized the right to a defense and held that it was violated when a trial judge harassed and threatened a defense witness to the point that the witness refused to testify,[1] when a state witness-voucher rule of evidence prevented a defendant from cross-examining a man who had previously confessed to the crime,[2] when a state's evidence rule excluded evidence about the circumstances of a confession without valid justification,[3] and when a state's evidence rule was overly restrictive of the right to

---

[1] Webb v. Texas, 93 S.Ct. 351 (1972).

[2] Chambers v. Mississippi, 93 S.Ct. 1038 (1973).

[3] Crane v. Kentucky, 106 S.Ct. 2142 (1986).

introduce proof of third-party guilt.[4] Each of those decisions addressed a situation where the trial court's behavior or a state evidence rule unreasonably prevented a defendant from presenting relevant evidence that he was not guilty of the elements of the crime.

None of the cited Supreme Court decisions, nor any decision cited by Petitioner, held that a refusal to consider or admit a certain form of evidence in connection with a post-verdict motion violated the federal right to present a defense (or any other right under the federal constitution). Petitioner has not demonstrated that the state court's decision of this issue was an unreasonable application of clearly established federal law as decided by the Supreme Court. Habeas relief is, therefore, not allowed.

**Ineffective Assistance of Counsel**

Petitioner argues that his attorney rendered ineffective assistance in a number of ways. To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Petitioner argues that trial counsel was ineffective for (1) not objecting that the superseding indictment was not returned by the grand jury in open court, (2) not objecting to the identification testimony from Tiera Thomas, and (3) not interviewing or investigating Deanne Dennis. Petitioner first pursued these issues in his post-conviction application. The trial judge noted that the prosecutor had filed the superseding indictment with the clerk

---

[4] Holmes v. South Carolina, 126 S.Ct. 1727 (2006).

in open court, and he summarily denied the ineffective assistance of counsel claims on the grounds that Petitioner did not meet his burden under Strickland. Tr. 1161-62. The appellate court and Supreme Court also summarily denied writ applications. Tr. 1250, 1352.

Petitioner's Strickland claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

Petitioner's complaint that counsel should have challenged the superseding indictment lacks merit. State courts have thoroughly addressed the various attacks on the indictment and found them lacking, both factually and legally. Furthermore, there is no prejudice because the state could easily cure such a procedural deficiency by obtaining a new indictment. Pickney v. Cain, 337 F.3d 542, 545 (5th Cir. 2003).

Petitioner points out that Tiera Thomas testified that she viewed the photo lineup the day after the murder, but police notes indicate that the lineup happened several days later. Petitioner argues that counsel should have made more of this discrepancy. The record shows that counsel did explore the issue on cross-examination of the witness and police. Tr. 493, 633-642. Petitioner also argues that counsel should have sought to suppress the identification because his photograph had appeared on television several times in the interim, but there is no record evidence of such airings or that the witness saw them. The state court's decision to reject these claims and deny relief under Strickland was not unreasonable.

Petitioner, who was in his forties at the time, next faults counsel for not pursuing a line of cross-examination of Deanne Dennis. Petitioner says that he told his attorney that he and Deanne, his teenage niece, had been having an inappropriate sexual relationship and, after Petitioner broke it off and started a relationship with Deanne's friend, Deanne became jealous and vindictive. Petitioner argues that counsel should have used this information, and Deanne's mental capacity, to cross-examine her and suggest that she fabricated her testimony out of spite as a jilted ex-lover. Petitioner admits that counsel told him that it would not be good for him to have the jury hear that he had a sexual relationship with his teen niece. Petitioner agrees that this might be so, but he said it was his only defense under the circumstances.

When the state court rejected this claim of ineffective assistance, it was not an objectively unreasonable application of the Strickland principles. There may be attorneys who would have attempted the line of cross-examination suggested by Petitioner, but most

Page **12** of **14**

reasonable attorneys would probably prefer that the jury not hear that their client was having an incestuous relationship with a minor relative. Given the room for at least reasonable disagreement on that strategy, it was not constitutionally deficient performance to elect not to pursue that approach. There is no basis for habeas relief on this final claim.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a

certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

      THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of January, 2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge